382 S.E.2d 577

**In re CAROLYN JEAN T. and Terry Jo T.**

**No. 18870.**

Supreme Court of Appeals of West Virginia.

July 14, 1989.

---

Annette Fantasia, Parkersburg, for Carolyn Jean T. and Terry Jo T., appellees.

Don Hall, Charleston, Joseph T. Santer, Robert W. Friend, Parkersburg, for Kathryn T., appellant.

## PER CURIAM:

Kathryn T.[1] appeals from the final order of the Circuit Court of Wood County which terminated her parental rights to her infant children, Carolyn Jean T. and Terry Jo T. She asserts that there is a reasonable likelihood that the alleged conditions of neglect or abuse can be substantially corrected, that she was denied the full improvement period set by the court, that the circuit court erred in refusing to grant an additional improvement period, and that the "Improvement Period Plan" (Plan) did not meet statutory requirements.

Kathryn T. is the natural parent of Carolyn Jean T., born September 17, 1985, and Terry Jo T., born July 7, 1984.[2] A child abuse petition was filed on April 7, 1986, after an x-ray showed that Carolyn Jean, then six and one-half months old, had sustained a skull fracture and bruises upon her face and body. The petition also alleged that both children were neglected. The West Virginia Department of Human Services (DHS) requested temporary custody of both children until Kathryn's parental rights could be permanently terminated and the children placed for adoption.

The circuit court granted DHS temporary custody and, after an adjudicatory hearing held on June 3, 1986, found that Kathryn inflicted or allowed the infliction of physical abuse upon Carolyn Jean, that Kathryn's explanation of the injuries was inconsistent with medical testimony, and that both children were neglected within the meaning of W.Va.Code, 49–1–3. On August 5, 1986, during a dispositional hearing, the circuit court granted Kathryn an improvement period lasting for a term of twelve months. The circuit court incorporated in its order a Plan agreed to and signed by the parties, their counsel, and counsel for the infant children.

The court closely monitored the improvement period, setting several hearings to determine what progress had been made. The improvement period was extended for an additional six months, with review scheduled for February 19, 1988.

The matter came on to be heard on January 28, 1988, by Special Judge George M. Scott. The circuit court found that there was no reasonable likelihood of substantial improvement in the reasonably foreseeable future as demonstrated by the "terrible lapse of time" which had transpired between the taking of the children and the final hearing and the "unfortunately weak response that has been forthcoming."

The adjudication of abuse and neglect is not contested in this appeal. Disposition of neglected or abused children proceeds, as this Court explained in Syllabus Point 8 of *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973):

> "Once a court exercising proper jurisdiction has made a determination upon sufficient proof that a child has been neglected and his natural parents were so derelict in their duties as to be unfit, the welfare of the infant is the polar star by which the discretion of the court is to be guided in making its award of legal custody. Even then, the legal rights of the parents, being founded in nature and

1. Following our past practice in juvenile and domestic relations cases which involve sensitive facts, we do not utilize the last names of the parties. *State ex rel. W.Va. Dep't of Human Serv. v. Cheryl M.*, 177 W.Va. 688, 356 S.E.2d 181 (1987); *Nancy Viola R. v. Randolph W.*, 177 W.Va. 710, 356 S.E.2d 464 (1987); *West Virginia Dep't of Human Serv. v. La Rea Ann C.L.*, 175 W.Va. 330, 332 S.E.2d 632 (1985).

2. This proceeding did not address or resolve any paternal parental rights.

wisdom, will be respected unless they have been transferred or abandoned."

■ We described the constitutional dimension of the parental right in Syllabus Point 1 of *State ex rel. W.Va. Dep't of Human Serv. v. Cheryl M.*, 177 W.Va. 688, 356 S.E.2d 181 (1987):

> " 'In the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions.' Syllabus Point 1, *In Re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973)."

■ There are limits to parental rights. We stated in Syllabus Point 1 of *State v. C.N.S.*, 173 W.Va. 651, 319 S.E.2d 775 (1984):

> " 'Though constitutionally protected, the right of the natural parent to the custody of minor children is not absolute and it may be limited or terminated by the State, as *parens patriae*, if the parent is proved unfit to be entrusted with child care.' Syllabus Point 5, *In Re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973)."

W.Va.Code, 49–6–5(c) (1984), provides that "[t]he court may as an alternative disposition allow to the parents or custodians an improvement period not to exceed twelve months.... At the end of the period the court shall hold a hearing to determine whether the conditions have been adequately improved, and at the conclusion of such hearing, shall make a further dispositional order in accordance with this section."

■ The circuit court, at the close of the dispositional hearing, granted Kathryn a twelve-month improvement period. She contends that she substantially complied with the terms and conditions of the improvement period, although the Plan did not meet the requirements of W.Va.Code, 49–6D–3 (1984).[3] The Plan set out nine terms which had to be completed before the children might be returned to their mother for a trial period. The goal of the Plan was to provide a safe, stable home for the children. The terms included obtaining a permanent residence with adequate facilities, seeking employment, attending parenting classes, obtaining psychological treatment if suggested by psychological evaluation, applying for Housing and Urban Development (HUD) housing, and generally cooperating with DHS. The Plan also set terms to be implemented after the children were returned to their mother.

The Plan in this case, while not called a "family case plan," substantially met the requirements of W.Va.Code, 49–6D–3, by "clearly setting forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening these problems." *State ex rel. W.Va. Dep't of Human Serv. v. Cheryl M.*, 177 W.Va. at 693, 356 S.E.2d at 186.

The Plan's main deficiency, i.e., no indicated order of priority for the terms of the Plan, underlies Kathryn's argument that she substantially complied with the Plan.[4]

---

3. W.Va.Code, 49–6D–3 (1984), provides, in pertinent part:

> "Every family case plan prepared by the department shall contain the following:
> "(1) A listing of specific, measurable, realistic goals to be achieved;
> "(2) An arrangement of goals into an order of priority;
> "(3) A listing of the problems that will be addressed by each goal;
> "(4) A specific description of how the assigned caseworker or caseworkers and the abusing parent, guardian or custodian will achieve each goal;
> "(5) A description of the departmental and community resources to be used in implementing the proposed actions and services;
> "(6) A list of the services which will be provided;
> "(7) Time targets for the achievement of goals or portions of goals;
> "(8) An assignment of tasks to the abusing or neglecting parent, guardian or custodian, to the caseworker or caseworkers, and to other participants in the planning process; and
> "(9) A designation of when and how often tasks will be performed."

4. Certain terms of the Plan give the appearance of not meeting the "realistic" standard in W.Va.

Kathryn points out, and DHS's periodic reports to the court substantiate, that she complied with some of the terms of the Plan. DHS contends that while she completed parenting classes and fully cooperated with DHS by allowing visits in her home, she did not have a genuine desire to change herself, as evidenced by the lack of cooperation with counselors at the Western District Guidance Center.

In this case, any written deficiencies were remedied by the circuit court's clear articulation to Kathryn of its priority that in order to retain custody of her children she would be required to undergo counseling to appreciate the seriousness of the threat to her children's safety posed by the original conditions of abuse and neglect. The circuit court assisted Kathryn in obtaining counseling, held hearings every few months to monitor her progress, and on September 1, 1987, extended the improvement period an additional six months to give her an opportunity to continue with the counseling. The circuit court saw practically no effort by Kathryn to improve, but afforded her a last opportunity to demonstrate her compliance with the terms of the improvement period.

■ At the final dispositional hearing, the testimony as to her counseling did not show sufficient progress. The circuit court concluded that Kathryn was still markedly lacking in awareness of her responsibility to provide for the needs of her children and that, as a result, there was no reasonable likelihood of substantial improvement in the foreseeable future. We find that Kathryn had a meaningful improvement period and that the record supports the circuit court's termination of her parental rights.

■ We find no merit in Kathryn's argument that she was improperly denied a full improvement period because the final dispositional hearing was held three weeks early. This argument ignores the fact that Kathryn received not only the full twelve-month improvement period, but an additional five-and-one-half month extension. For

this reason, we also find no error in the denial of an additional improvement period.

For the foregoing reasons, we affirm the order of the Circuit Court of Wood County terminating Kathryn T.'s parental rights in her children Carolyn Jean T. and Terry Jo T.

Affirmed.

---

Code, 49–6D–3. For example, Kathryn was not eligible for HUD benefits while her children were not in her custody. Yet, to show she was

progressing towards providing a stable home and complying with the Plan, Kathryn had to apply for HUD benefits once a month.