607 S.E.2d 843

**In Re: DEJAH Rose P. (Now Dejah Rose F.)**

**No. 31710.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 8, 2004.

Decided Dec. 1, 2004.

Terri L. Tichenor, Esq., Whiteman Burdette, PLLC, Fairmont, for the Appellant, Julie F.

Darrell V. McGraw, Jr., Esq., Attorney General of West Virginia, Charleston, Rocco S. Fucillo, Esq., Assistant Attorney General, Fairmont, for the Appellee, West Virginia Department of Health and Human Resources.

April D. Conner, Esq., Clarksburg, Guardian Ad Litem for Dejah Rose P. (now Dejah Rose F.).

PER CURIAM.

This case is before this Court upon the appeal of Julie F. from the July 24, 2003, order of the Circuit Court of Harrison County, West Virginia, terminating her parental rights to her infant daughter, Dejah Rose P., now known as Dejah Rose F.[1] The Circuit Court concluded that appellant Julie F.'s long-term addiction to drugs and past failures in responding to treatment have resulted in the identification of Dejah Rose as a neglected or abused child as defined by law in this State. Dejah Rose has been in the custody of the West Virginia Department of Health and Human Resources since April 2002 and has resided in the same foster home since that time.

Specifically, the Circuit Court found that, in view of the appellant's failure to fully comply with the terms of her post-adjudicatory improvement period, and because the time required for the appellant's recovery from addiction is uncertain under her current treatment program, there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the

---

1. This Court follows its past practice in sensitive cases and shall refer to the last names of certain individuals by initials only. *Department of Health and Human Resources ex rel. Mills v. Billy Lee C.,* 199 W.Va. 541, 543 n. 1, 485 S.E.2d 710, 712 n. 1 (1997); *In re: Danielle T.,* 195 W.Va. 530, 531 n. 1, 466 S.E.2d 189, 190 n. 1 (1995).

It should be noted that, after paternity testing indicated that an individual by the name of Robert P. is not the biological father of Dejah Rose P., the Circuit Court directed that the child would be known as Dejah Rose F, consistent with the last name of her mother, appellant Julie F.

near future. As a result, the Circuit Court held that the welfare of Dejah Rose required the termination of the appellant's parental rights. Nor did the Circuit Court grant the appellant any post-termination visitation with Dejah Rose.

Appellant Julie F., conceding that immediate reunification with her daughter is unwarranted, contends that the Circuit Court committed error in not granting her an alternative to termination. Acknowledging her drug addiction and emphasizing that she is currently enrolled in a treatment program on a voluntary basis, the appellant asserts that the Circuit Court should have allowed her a gradual reunification with Dejah Rose under the supervision of the Circuit Court and the Department of Health and Human Resources while the appellant continues with her treatment. On the other hand, the brief of the Department of Health and Human Resources filed in this Court in support of the order terminating the appellant's parental rights was joined by the guardian ad litem appointed by the Circuit Court for the child.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. Upon a careful review of this sad and distressing case, this Court concludes that the Circuit Court acted within its discretion in making the difficult decision to terminate the appellant's parental rights to Dejah Rose. The Circuit Court's decision was based upon extensive findings of fact. In that context, this Court notes the observation made in *State ex rel. Diva P. v. Kaufman*, 200 W.Va. 555, 490 S.E.2d 642 (1997), that the "intangibles" in abuse and neglect cases justify the deferential approach this Court takes regarding Circuit Court findings. 200 W.Va. at 562, 490 S.E.2d at 649.

Accordingly, the July 24, 2003, order of the Circuit Court of Harrison County is affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

For a number of years, the appellant, Julie F., has been an abuser of drugs, such as OxyContin and Xanax. As indicated by the Department of Health and Human Resources, the appellant was incarcerated, prior to the birth of her child, on bad check charges in connection with her drug habit and had failed to respond to treatment for her addiction on two prior occasions.

In March 2002, the appellant was living in Clarksburg, West Virginia, with Robert P. who also has a history of drug abuse. On March 16, 2002, Dejah Rose was born. At that time, the hospital staff noticed drug related "track marks" on the appellant's arms and feet. As later determined, the appellant had not consistently pursued prenatal care and had abused drugs during her pregnancy.[2] After her release from the hospital with her baby, the appellant continued to abuse drugs. Dejah Rose is the appellant's only child.

In April 2002, the Department of Health and Human Resources obtained emergency custody of Dejah Rose and, soon after, placed her in a foster home where she has remained throughout these proceedings. In addition, the Department filed a petition in the Circuit Court of Harrison County alleging that Dejah Rose was a neglected or abused child [3]

---

**2.** The record indicates that at birth the child, Dejah Rose, exhibited symptoms indicative of drug addiction.

**3.** Pursuant to *W.Va.Code*, 49–1–3 (1999), the phrase *child abuse or neglect* (or *child abuse and neglect*) is defined as "physical injury, mental or emotional injury ... or negligent treatment or maltreatment of a child by a parent, guardian or custodian who is responsible for the child's welfare, under circumstances which harm or threaten the health and welfare of the child."

Specifically, an *abused child* is defined in that section to include a child whose health or welfare is harmed or threatened by a parent, guardian or custodian "who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home [.]"

A *neglected child* is defined in that section to include a child whose physical or mental health is harmed or threatened by a failure of the child's parent, guardian or custodian "to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when such refusal, failure or inability is not due primarily to

and asking the Circuit Court to terminate the appellant's parental rights.[4] Thereafter, the Circuit Court appointed a guardian ad litem for the child and a separate Court–Appointed Special Advocate to further the child's best interests.[5]

On April 29, 2002, the Circuit Court conducted a preliminary hearing and ruled that Dejah Rose should remain in the custody of the Department of Health and Human Resources and should continue to reside in the foster home. *W.Va.Code,* 49–6–3 (1998). The appellant, however, was granted supervised visitation with her daughter. Thereafter, the appellant signed a stipulated adjudication pursuant to Rule 26 of this Court's Rules of Procedure for Child Abuse and Neglect Proceedings[6] in which she acknowledged that, as a result of her drug addiction, Dejah Rose was a neglected or abused child under the laws of this State. In that regard, the appellant admitted that she used illicit drugs during the last trimester of her pregnancy and that she had jeopardized the health of her baby by not regularly attending prenatal care. On the other hand, the appellant indicated in the adjudicated stipulation that she left the Clarksburg area and was receiving treatment for her addiction at a half-way house known as the Mid–Ohio Valley Fellowship Home in Parkersburg, West Virginia.

An adjudicatory hearing was conducted in the case on July 16, 2002. *W.Va.Code,* 49–6–2 (1996). The Circuit Court directed that custody of Dejah Rose continue with the Department and that she remain in the foster home. However, in addition to permitting further visitation with her daughter, the Circuit Court granted the appellant, Julie F., a six-month post-adjudicatory improvement period, conditioned, as set forth in the family case plan filed by the Department, upon the appellant's continued participation in the program at the Mid–Ohio Valley Fellowship Home.

In September 2002, the Department of Health and Human Resources filed a motion to revoke the improvement period because, in August 2002, the appellant tested positive for opiates and had been expelled from the Fellowship Home. A secondary ground for the motion was the allegation that the appellant had been involved in a relationship with a male resident against the rules of the Home. The Circuit Court conducted an evidentiary hearing upon the motion and ruled that, although the allegations of the Department were true, the appellant would be granted a three-month extension of the post-adjudicatory improvement period. *See, W.Va.Code,* 49–6–12(g) (1996), permitting such extensions. The Court's ruling was based upon the fact that, since her expulsion from the Mid–Ohio Valley Fellowship Home, the appellant returned to Clarksburg and voluntarily enrolled in a methadone treatment program at the Clarksburg Treatment Center.

On April 15, 2003, the Circuit Court conducted a disposition hearing. *W.Va.Code,*

---

a lack of financial means on the part of the parent, guardian or custodian [.]"

**4.** The petition filed by the Department alleged that the biological father of Dejah Rose is unknown.

A paternity test conducted in May 2002 indicated that Robert P. is not the biological father of the child. Thereafter, a test conducted in February 2003 indicated that an individual by the name of Darryl H. is the biological father of Dejah Rose. Darryl H. later acknowledged the child *as his own, and the Circuit Court* determined Darryl H. to be a neglectful parent. In fact, the record indicates that Darryl H. is the biological father of several other children and that he has not provided them with financial or emotional support. The Department recommends that the parental rights of Darryl H. to Dejah Rose be terminated. This appeal, however, is limited to a consideration of the parental rights of the appellant, Julie F.

**5.** Rule 52 of this Court's Rules of Procedure for Child Abuse and Neglect Proceedings provides for the appointment of a Court–Appointed Special Advocate (CASA) who has the authority in abuse and neglect cases to independently review the record and advocate the best interests of the child.

**6.** Rule 26 of the Rules of Procedure for Child Abuse and Neglect Proceedings states, in part, that any stipulated or uncontested adjudication shall include the following information: "(1) Agreed upon facts supporting court involvement regarding the respondent's(s') problems, conduct or condition; and (2) A statement of respondent's(s') problems or deficiencies to be addressed at the final disposition."

49–6–5 (2002); Rule 35(b), West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings. At that time, Dejah Rose was approximately 13 months old and had been in the same foster home since April 2002. Following the hearing, the Circuit Court entered the order of July 24, 2003, terminating the appellant's parental rights. The order was prepared by the guardian ad litem for the child.

In terminating the appellant's parental rights, the Circuit Court noted that the appellant failed to respond to treatment for her drug addiction on prior occasions and had violated the terms of the post-adjudicatory improvement period as discussed above. Moreover, the Circuit Court emphasized that, based upon the evidence, the appellant would be unable to complete her current methadone treatment program in the near future and that, in fact, it is unknown how much more time would be required. As the Circuit Court concluded: "[T]here is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future, and it is necessary for the welfare of the infant child to terminate the parental rights of [Julie F.]"

## II.

## DISCUSSION

▆▆▆ This Court has long recognized the principle that parental rights are not absolute when in conflict with the health and welfare of the child. Syllabus point 5 of *In Re: Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973), holds: "Though constitutionally protected, the right of the natural parent to the custody of minor children is not absolute and it may be limited or terminated by the State, as *parens patriae*, if the parent is proved unfit to be entrusted with child care." Syl. pt. 3, *In Re: Carolyn Jean*, 181 W.Va. 383, 382 S.E.2d 577 (1989); syl. pt. 1, *State v. C.N.S.*, 173 W.Va. 651, 319 S.E.2d 775 (1984). Moreover, as this Court said in syllabus point 3 of *In Re: Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996): "Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Syl.

pt. 4, *In Re: Frances J.A.S.*, 213 W.Va. 636, 584 S.E.2d 492 (2003).

Specifically, a circuit court has the authority under *W.Va.Code*, 49–6–5(a)(6) (2002), to terminate parental rights when necessary for the welfare of the child, upon a finding "that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future [.]" Pursuant to that statute, the circuit court shall, in such cases, consider: "(A) The child's need for continuity of care and caretakers; (B) the amount of time required for the child to be integrated into a stable and permanent home environment; and (C) other factors as the court considers necessary and proper." Moreover, *W.Va.Code*, 49–6–5(b) (2002), provides in relevant part:

As used in this section, "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" shall mean that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help. Such conditions shall be considered to exist in the following circumstances, which shall not be exclusive:

(1) The abusing parent or parents have habitually abused or are addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and such person or persons have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning [.]

▆▆▆ Finally, *W.Va.Code*, 49–6–5(b) (2002), sets forth several less restrictive alternatives to the termination of parental rights. Those alternatives include, for example, permitting the child to remain with the parents but under the supervision of the Department of Health and Human Resources. However, in certain circumstances those alternatives are not feasible. Syllabus point 2 of *In Re: R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980), holds: "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected

children, *W.Va.Code,* 49–6–5 [1977] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under *W.Va. Code,* 49–6–5(b) [1977] that conditions of neglect or abuse can be substantially corrected." [7] Syl. pt. 2, *In Re: Erica C.,* 214 W.Va. 375, 589 S.E.2d 517 (2003); syl. pt. 2, *DHHR ex rel. Mills v. Billy Lee C.,* 199 W.Va. 541, 485 S.E.2d 710 (1997).

In the case now to be determined, the Circuit Court concluded that "there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future, and it is necessary for the welfare of the infant child to terminate the parental rights of [Julie F.]" In reviewing that conclusion, this Court is guided by the standard of review set forth in syllabus point 1 of *In Re: Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996):

Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. pt. 1, *In Re: Stephen Tyler R.,* 213 W.Va. 725, 584 S.E.2d 581 (2003); syl. pt. 1, *In Re: Jamie Nicole H.,* 205 W.Va. 176, 517 S.E.2d 41 (1999); syl. pt. 4, *In Re: Taylor B.,* 201 W.Va. 60, 491 S.E.2d 607 (1997).

The appellant, Julie F., emphasizes that, since the removal of her child by the Department of Health and Human Resources in April 2002, she has obtained new housing and employment, completed classes in parenting skills and voluntarily enrolled in the methadone treatment program at the Clarksburg Treatment Center. Moreover, the appellant states that she has stayed away from Robert P., who also has a history of drug abuse. Thus, the appellant contends that she is entitled to a gradual reunification with Dejah Rose under the supervision of the Circuit Court and the Department.

On the other hand, the record contains substantial evidence, largely undisputed, justifying the Circuit Court's concern for the welfare of the child and warranting the termination of the appellant's parental rights.

In terms of drug abuse or drug addiction, *W.Va.Code,* 49–6–5 (2003), contemplates an inquiry into the parent's past conduct as well as the parent's prognosis. As discussed above, the statute authorizes a circuit court to determine: (1) whether the parent has demonstrated an inadequate capacity to solve the problems of neglect or abuse on his or her own or with help, and (2) whether the parent has habitually abused drugs or is addicted to drugs. Here, it is undisputed that the appellant abused drugs for a number of years and jeopardized the health of Dejah Rose by abusing drugs during her pregnancy and by not regularly attending prenatal care. After her release from the hospital with her baby, the appellant continued to abuse drugs. Counting her expulsion from the Mid–Ohio Valley Fellowship Home, during the improvement period, after testing positive for opiates, the appellant has failed to respond to treatment for her addiction three times.

The appellant enrolled in the methadone treatment program at the Clarksburg Treatment Center in November 2002. While this Court is not unmindful of the appellant's efforts to remain drug free, *W.Va.Code,* 49–6–5 (2002), further provides that, in terminating parental rights, a circuit court shall consider: (A) the child's need for "continuity of care and caretakers" and (B) "the amount of time required for the child to be integrated into a stable and permanent home environment." Here, Dejah Rose has resided in the same foster home since April 2002. As the

---

7. *W.Va.Code,* 49–6–5 (1977), has been amended several times since 1977. Those amendments, however, do not affect the holding expressed in syllabus point 2 of *In Re: R.J.M.*

Circuit Court found, the time required for the appellant's recovery from addiction at the Clarksburg Treatment Center is uncertain. The testimony given at the April 15, 2003, disposition hearing concerning the Treatment Center revealed that, due to the individualized nature of the program, a patient could remain in treatment from six months to beyond one year. Moreover, such a period would not necessarily include the time required for other needed services, such as outpatient counseling. During the disposition hearing, David Jeffrey, a psychologist, testified that parenting would be difficult while involved in a methadone treatment program.

In the parental termination case of *In Re: Emily B.*, 208 W.Va. 325, 540 S.E.2d 542 (2000), the Circuit Court of Mercer County granted the mother an improvement period scheduled to commence upon the mother's successful completion of a substance abuse treatment program. This Court reversed, suggesting, in part, that the indefinite nature of such an improvement period contradicts the intent of the West Virginia Legislature to expedite abuse and neglect proceedings in order to safeguard the welfare of children. 208 W.Va. at 337, 540 S.E.2d at 554.[8]

This Court observed in *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 470 S.E.2d 205 (1996), that a child deserves "resolution and permanency" in his or her life and deserves the right to rely on his or her caretakers "to be there to provide the basic nurturance of life." 196 W.Va. at 260, 470 S.E.2d at 214. In this case, the ruling of the Circuit Court to terminate the appellant's parental rights to Dejah Rose was based upon extensive findings of fact and a correct application of the law. Consequently, this Court is of the opinion that the ruling of the Circuit Court terminating the appellant's parental rights, as well as the Circuit Court's decision at the disposition stage not to employ less restrictive alternatives[9], should not be disturbed.

### III.

### CONCLUSION

Upon all of the above, the July 24, 2003, order of the Circuit Court of Harrison County, West Virginia, terminating the appellant's parental rights is affirmed.

Affirmed.

Justice STARCHER, deeming himself disqualified, did not participate in the consideration or decision of this case.

---

8. The *In Re: Emily B.* opinion indicates that the Circuit Court's implementation of the mother's improvement period was problematic because, by the very terms of the Court's ruling, the delay was indefinite. Moreover, this Court observed that, under the circumstances of the case, basing the commencement of the improvement period upon the mother's successful completion of a substance abuse treatment program was speculative. 208 W.Va. at 337, 540 S.E.2d at 554.

9. As stated above, the Circuit Court did not grant the appellant, Julie F., any post-termination visitation with Dejah Rose, although it had the authority to do so. Syl. pt. 5, *In Re: Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995). Upon a review of the record, this Court affirms the denial of post-termination visitation. In that regard, this Court notes the representations of counsel during oral argument before this Court to the effect that, at some point after the July 24, 2003, order of the Circuit Court, the appellant may have temporarily left the State of West Virginia, and has, in any event, been somewhat out of contact with those concerned in this appeal.