# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: J.H., B.C., J.J., & J.J.**

**No. 14-0991** (Mingo County 13-JA-54 through 13-JA-57)

**FILED**

March 16, 2015
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

## MEMORANDUM DECISION

Petitioner Mother, H.H., by counsel Susan J. Van Zant, appeals the Circuit Court of Mingo County's September 10, 2014, order terminating her parental rights to J.H., B.C., J.J.-1, and J.J.-2.[1] The Department of Health and Human Resources ("DHHR"), by counsel, S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Diana Carter Wiedel, filed a response on behalf of the children also supporting the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights because she improved the conditions that led to the abuse and neglect; termination was not in the children's best interests; and termination was not the least restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2013, the DHHR filed an abuse and neglect petition against petitioner and the father of J.H. and B.C. alleging domestic violence in the children's presence, failure to protect the children, unsanitary conditions in the home, and substance abuse. In approximately June or July of 2013, the biological father of J.J.-1 and J.J.-2, who was at that time petitioner's husband, passed away.[2] According to the evidence presented at the preliminary hearing held on July 25, 2013, and the adjudicatory hearing held on August 26, 2013, Child Protective Services ("CPS") received a referral in November of 2012 that petitioner's infant child was found wandering alone near a school while petitioner was asleep at her residence. After securing the child, a CPS worker went to petitioner's residence and found it filled with "clutter" and smelling overwhelmingly of dog feces, urine, and trash. According to the CPS worker's testimony, petitioner's dogs defecated and urinated in portions of the residence, and petitioner failed to remove or otherwise clean it. A "foul smell" emanated from the refrigerator, which had what appeared to that CPS worker to be mold growing around it. The CPS worker also deemed petitioner's beds unsuitable

---

[1]Because two children share the same initials, the Court will refer to the children as J.J.-1 and J.J.-2. The circuit court case numbers also serve to distinguish these children.

[2]The record on appeal does not provide exact dates for many of the relevant events discussed herein.

1

for habitation. With petitioner's agreement, CPS instituted a temporary protection plan under which petitioner would participate in parental services to correct the problems at issue. The CPS worker admitted that petitioner initially "made great improvements." However, petitioner's service provider requested to be taken off the case when one of petitioner's dogs bit her and continued thereafter to show aggressive behavior toward her. The new service provider had difficulty contacting petitioner, and, ultimately, that service provider deemed petitioner to be non-compliant.

Shortly thereafter, following her then-husband's death in approximately June or July of 2013, the CPS worker again went to petitioner's residence. She again found it in deplorable conditions. Petitioner had many dogs that entered/exited the residence through a window in the living room, which damaged the furniture in that room and kept the home dirty. Dog feces and urine were again present on the front porch of and inside the residence. During the CPS worker's visit to the home, and in the CPS worker's presence, petitioner kicked one of the dogs due to its aggressive behavior. At the CPS worker's request, petitioner agreed to permit relatives to take the children at that time, and CPS instituted an in-home safety plan to, again, provide petitioner an opportunity to correct the problems at issue. The DHHR filed the instant petition soon thereafter. Based on the evidence presented, the circuit court found that the children were abused and neglected. The circuit court granted petitioner a six-month, post-adjudicatory improvement period.

During her improvement period, petitioner was evicted from her residence for failure to pay rent despite receiving financial assistance from the DHHR for that residence. In January of 2014, petitioner tested positive on a drug screen for hydrocodone and opiates. In April of 2014, domestic violence occurred between petitioner and her then-husband[3] that led petitioner to file for an emergency protective order against him. She later withdrew that protective order request. It appears that she filed for divorce after the domestic violence incident but continued to reside with him even after filing for divorce.

Following a dispositional hearing held on September 3, 2014, the circuit court determined that, although petitioner made improvements in her situation since the initial filing, petitioner's eviction and domestic violence issues while on her lengthy improvement period weighed against immediate reunification and additional time to achieve reunification. The circuit court terminated her parental rights to all four children but granted post-termination visitation at the discretion of the children's caretaker. This appeal followed.

This Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire

_____

[3]Following the death of her husband in 2013, petitioner remarried.

2

evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in terminating her parental rights because she improved the conditions that led to the abuse and neglect. Pursuant to West Virginia Code § 49-6-5(b)(3), a respondent parent's failure to respond or follow through with a reasonable family case plan or other rehabilitative efforts constitutes circumstances in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected. Further, West Virginia Code § 49-6-5(a)(6) expressly states that the conditions of abuse or neglect be substantially corrected in the near future. The record clearly demonstrates that petitioner had approximately fourteen months to substantially correct the conditions that led to the abuse and neglect and failed to do so while on a court-ordered improvement period. Although petitioner argues that she maintained employment, participated in services, and filed for divorce, we cannot ignore the evidence before the circuit court that petitioner also failed a drug screen, was evicted from her residence, and had an episode of domestic violence in her home during those fourteen months. Therefore, we find no error in this regard.

Next, petitioner asserts that the circuit court erred in terminating her parental rights because termination was not in the children's best interests. Pursuant to West Virginia Code § 49-6-5(a)(6), termination is appropriate where there is a finding that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future, and termination is necessary for the child's welfare. Further, we have held that "'[a]lthough parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children.' Syl. Pt. 3, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996)." Syl. Pt. 2, *In re Timber M.*, 231 W.Va. 44, 743 S.E.2d 352 (2013). *See also Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989) ("[T]he best interests of the child[ren] is the polar star by which decisions must be made which affect children.") (citations omitted). Here, the circuit court found that the children deserved permanency following fourteen months of uncertainty. After reviewing the record on appeal, we find no error in the circuit court's findings that termination was necessary for the children's welfare and in their best interests to achieve permanency and stability.

Finally, petitioner claims that the circuit court erred in terminating her parental rights because termination was not the least restrictive alternative disposition. *See* West Virginia Code § 49-6-5(a); Syl. Pt. 1, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980) ("As a general rule the least restrictive alternative regarding parental rights to custody of a child under W.Va. Code, 49-6-5 (1977) will be employed[.]"). However, contrary to petitioner's argument, the record reflects that petitioner failed to demonstrate during her improvement period that she could fully comply with services. Moreover, petitioner ignores our further directions regarding termination

upon findings that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future. This Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code, 49–6–5 [1977] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va.Code, 49–6–5(b) [1977] that conditions of neglect or abuse can be substantially corrected." Syl. pt. 2, *In Re: R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 2, *In re Dejah P.*, 216 W.Va. 514, 607 S.E.2d 843 (2004). Here, the circuit court did not err in finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. Therefore, the circuit court did not err in terminating petitioner's parental rights without the use of intervening less restrictive alternatives.

Therefore, we find no error in the circuit court's termination of petitioner's parental rights. Given the facts of this case, there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future, and termination was necessary for the children's welfare and in the children's best interests. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon such findings.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** March 16, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II