# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**In Re: K.L., D.L., & M.L.**

**No. 14-1017** (Berkeley County 13-JA-62 through 13-JA-64)

**FILED**

April 13, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother, by counsel Nancy A. Dalby, appeals the Circuit Court of Berkeley County's September 8, 2014, order terminating her parental rights to K.L., D.L., and M.L. The Department of Health and Human Resources ("DHHR"), by counsel, Lee A. Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Nicholas Forrest Colvin, filed a response on behalf of the children also supporting the circuit court's order. Petitioner filed a reply. On appeal, petitioner asserts that the circuit court (1) lacked sufficient evidence to find that the children were "abused children" or "neglected children," within the statutory definitions of those phrases; (2) failed to make specific findings of fact and conclusions of law in its September 8, 2014, order; and (3) erred in moving to termination without employing a less restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2013, the DHHR filed an abuse and neglect petition against petitioner alleging a history of domestic violence between her and her then-husband, who was not the children's biological father; lack of supervision due to petitioner's substance abuse; educational neglect due to the children's missed school days and absences; and substance abuse otherwise affecting her parenting.[1] As to the domestic violence, the petition alleged that petitioner had been arrested for a domestic violence incident between her and her then-husband involving the use of a firearm, although the firearm had not been discharged. As to the substance abuse, the petition alleged that petitioner had a history of Child Protective Services ("CPS") referrals due to her substance abuse; passing out and frequently losing consciousness due to substance abuse, resulting in physical harm from falling; and testing positive for benzodiazepines, opiates, amphetamine, and cocaine while in the hospital for an injury resulting from a fall. The DHHR removed the children and placed them with their biological father, a non-abusing parent with no allegations against him.

---

[1]According to the record on appeal, petitioner had a traumatic brain injury following a vehicle accident in 2010.

1

In August of 2013, the circuit court held an adjudicatory hearing. Petitioner's eldest child, K.L., age eight, testified *in camera* that she had assumed the role of parent during the previous school year while she and the other children were in petitioner's care and custody. K.L. explained that she would wake and prepare herself and her younger brother for school and that she fixed meals because petitioner would not wake to do so. She stated that it was difficult to wake petitioner, and when she would wake, she would soon return to sleep. K.L. further testified that the children had been in a car with petitioner when petitioner apparently dealt drugs, and petitioner told them to "turn [their] heads" and "close [their] eyes" during that transaction. K.L. provided the detail that she overheard petitioner say "give me the money, and I'll give you the pills." Further, K.L. testified that petitioner and her friends would made so much noise that the children could not sleep, and petitioner and an individual identified as Patrick, who resided with petitioner, would fight, scream "a lot," and yell at each other. The children could hear these episodes through the wall and could hear the fighting, screaming, and yelling. K.L. stated that this fighting scared her. K.L. also testified that petitioner told her not to tell anyone that she slept so much or took "a lot of pills."

Petitioner testified at adjudication and admitted that she had, since the petition's filing, been arrested for domestic violence on two occasions. Petitioner further admitted to several positive drug screens in the preceding months, wherein she tested positive for morphine while attending a rehabilitation center and benzodiazepines, opiates, and cocaine during a hospital visit for an injury. Ultimately, the circuit court found that the children had been abused and neglected due to petitioner's domestic violence and substance abuse.

Between December of 2013 and early January of 2014, petitioner began a substance abuse treatment program, but was terminated from that program for violating its rules. In late January of 2014, the circuit court granted petitioner a post-adjudicatory improvement period. A condition of her improvement period was to maintain stable housing; petitioner chose to reside with her mother in Maryland. In February of 2014, petitioner underwent a substance abuse assessment wherein she stated that she did not think she had substance abuse problems. However, she admitted in that assessment to the social use of heroin, methadone, oxycodone, hydrocodone, and being "slipped cocaine" all within the previous three years. Based upon this assessment, petitioner began outpatient substance abuse treatment in June of 2014. Due to her number of missed sessions, petitioner was required to restart that program in July of 2014.

In August of 2014, the circuit court held the dispositional hearing. The DHHR presented evidence that petitioner, despite the requirement that she obtain stable housing, moved into multiple residences with multiple people (many of whose names she could not remember) during the course of her improvement period. Petitioner's substance abuse treatment coordinator testified that petitioner had, again, missed many sessions and might again be required to restart the program with no certainty that she would complete it. The circuit court found that, while her medical circumstances may have impaired her to some degree, petitioner failed to fully acknowledge or correct her problems during the improvement period. Therefore, due to petitioner's lack of improvement during the course of the proceedings, she could not provide the children with a safe, stable home. The circuit court terminated petitioner's parental rights to all three children. It is from this order that petitioner now appeals.

This Court has previously held that

> [a]lthough conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety. *In Interest of: Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Faith C.*, 226 W.Va. 188, 699 S.E.2d 730 (2010).

On appeal, petitioner first assigns error to the sufficiency of the evidence presented to support the findings that the children were "abused child[ren]" due to domestic violence and "neglected child[ren]" due to petitioner's substance abuse.[2] West Virginia Code § 49-1-3(1)(D) defines an "abused child" as one "whose health or welfare is harmed or threatened by . . . [d]omestic violence as defined in [§ 48-27-202]." In turn, West Virginia Code § 48-27-202 defines "domestic violence" as the "occurrence of one or more of the following acts between family or household members," which "acts" include "[a]ttempting to cause or intentionally, knowingly or recklessly causing physical harm to another[.]" In support, petitioner relies on *In re: Lilith H.*, 231 W.Va. 170, 744 S.E.2d 280 (2013), in which this Court reversed a finding of abuse and neglect based upon a single domestic argument between the mother in that matter and several other individuals. However, *In re: Lilith H.* is clearly distinguishable from the case at bar. Here, although petitioner contends that there was only one episode of domestic violence "alleged or testified to" in this matter, she fails to consider the full array of evidence presented to the circuit court. The circuit court heard testimony that petitioner and an individual identified as Patrick, who resided with petitioner, fought while the children were in the home, and K.L. testified that the children heard them fighting, screaming "a lot," and yelling through the wall, which scared her. Further, the circuit court heard testimony related to petitioner's two arrests for domestic violence during the pendency of these proceedings.[3] Moreover, while petitioner argues that the children were not "the target of any threat" and that they did not "suffer[] any injury," a

---

[2]Petitioner presents separate assignments of error to contest (1) the sufficiency of the evidence to support the "abused child" finding, and (2) the sufficiency of the evidence to support the "neglected child" finding. Due to the related nature of these assignments of error, we analyze them as a single challenge to the sufficiency of the evidence.

[3]See Rule 5 of the West Virginia Rules of Child Abuse and Neglect Proceedings ("Under no circumstances shall a civil protection proceeding be delayed pending the initiation, investigation, prosecution, or resolution of any other proceeding, including, but not limited to, criminal proceedings.").

child need not be the physical target of domestic violence or the threat of domestic violence to suffer harm. We have previously recognized the West Virginia Legislature's finding, as codified in West Virginia Code § 48-27-101(a)(2), that "[c]hildren . . . may suffer deep and lasting emotional harm . . . from exposure to domestic violence." Finally, in stating that the children did not feel "fearful" and that no one "was injured in the argument," petitioner ignores the episodes during which K.L. was scared when she heard fighting, screaming "a lot," and yelling. For these reasons, the circuit court did not err in finding that the children were "abused child[ren]" within the statutory definition. We find no error as to this issue.

Further, assuming that petitioner is correct as to the circuit court's finding of abuse due to domestic violence, we cannot find error in the circuit court's finding that she neglected the children. West Virginia Code § 49-1-3(11)(A)(i) defines a "neglected child" as one "[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent . . . to supply the child with necessary food, clothing, shelter, supervision, medical care or education[.]" The circuit court heard testimony that K.L., at eight years of age, assumed the role of caretaker for the other children, aged five and six, while petitioner slept; that petitioner told her not to tell anyone that she overslept and took "a lot of pills"; that one of the children found a firearm in the couch in the home, which scared K.L.; and that petitioner apparently involved the children in a drug transaction. Petitioner argues that she had substantial medical concerns that necessitated the taking of prescribed pain medication and that may have resulted in her failure to properly supervise the children and complete her improvement period as designated. However, the circuit court heard testimony that petitioner failed multiple drug screens for substances for which there was no valid prescription offered; that she failed to submit to a substantial portion of the drug screens ordered during her improvement period; that she admitted in her substance abuse assessment to heroin use within the last three years, among other substances; and that she was required to restart a substance abuse treatment program during her improvement period due to missed sessions. There clearly existed sufficient evidence to find that petitioner had a substance abuse problem and failed to provide, at a minimum, adequate supervision of the children causing the threat of harm due to the same. As such, the DHHR established petitioner's neglect, and we find no error in the circuit court's order as to this issue.

Next, relying again on *In re: Lilith H.* and West Virginia Code § 49-6-5, petitioner assigns error to the adequacy of the circuit court's findings and conclusions in its September 8, 2014, order.[4] This Court has held:

---

[4]Petitioner places great weight on the circuit court's inclusion in its September 8, 2014, order of a quotation from *In re: Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993) regarding "extensive physical abuse" to children and a parent's failure to identify the physical abuser. However, this quotation exists within a longer statement of the relevant case and statutory law, and the circuit court did not make any findings of fact or conclusions of law that the children in this matter were physically abused or that petitioner failed to identify any such physical abuser. As the circuit court made no findings or conclusions based on this quotation, the inclusion of it in its order bears no relevance to our analysis of the adequacy of the findings and conclusions therein. For those reasons, we find no error in this regard.

4

Where a trial court order terminating parental rights merely declares that there is no reasonable likelihood that a parent can eliminate the conditions of neglect, without explicitly stating factual findings in the order or on the record supporting such conclusion, and fails to state statutory findings required by West Virginia Code § 49-6-5(a)(6) (1998) (Repl.Vol.2001) on the record or in the order, the order is inadequate.

Syl. Pt. 4, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001). In the September 8, 2014, order, in addition to specific references to this matter and its parties, the circuit court found that petitioner had failed to successfully complete her improvement period; failed to correct the conditions that led to the abuse and neglect; failed to consistently drug screen during her improvement period; seemingly testified falsely as to her drug use; and failed to accept that she had a problem. It also referenced both the DHHR's recommendation and the guardian's report and recommendation. As cited above, the relevant findings must be made "in the order *or* on the record." *Id.* (emphasis added). The circuit court placed more than adequate findings on the record, pursuant to West Virginia Code § 49-6-5, comprising approximately seven pages of transcript, following two days of evidence and argument on the proper disposition of this matter. Accordingly, we find no error in this regard.

Finally, petitioner assigns error to the circuit court's termination of her parental rights without employing a less restrictive alternative pursuant to West Virginia Code § 49-6-5(a) and our holding in syllabus point one of *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).[5] Petitioner's argument fails to consider our directions regarding termination upon findings that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future. This Court held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code [§] 49-6-5 [1977] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va. Code [§] 49-6-5(b) [1977] that conditions of neglect or abuse can be substantially corrected." Syl. pt. 2, *In Re: R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

---

[5] This Court previously held that

> [a]s a general rule the least restrictive alternative regarding parental rights to custody of a child under W.Va. Code [§] 49-6-5 (1977) will be employed; however, courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements.

Syl. Pt. 1, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

5

Syl. Pt. 2, *In re Dejah P.*, 216 W.Va. 514, 607 S.E.2d 843 (2004). Our review of the record shows no error in the circuit court's termination of petitioner's parental rights to all of her children. The record reflects that the circuit court granted petitioner a post-adjudicatory improvement period. Ultimately, the circuit court determined that petitioner failed to successfully complete her improvement period due to her failure to complete substance abuse treatment, failure to comply with drug screening, and lack of stable housing, among other concerns. We do not find that the circuit court erred in finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future, and that termination of her parental rights was necessary for the children's welfare. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon these findings. Therefore, the circuit court did not err in terminating her parental rights without employing less restrictive dispositional alternatives.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** April 13, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II