# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re*: **C.E. & N.E.-2**

**No. 15-0513** (Wetzel County14-JA-3 & 14-JA-4)

**FILED**

November 23, 2015
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother N.E.-1[1], by counsel Jeremiah L. Gardner, appeals the Circuit Court of Wetzel County's April 30, 2015, order terminating her parental rights to C.E. and N.E.-2. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order. The guardian ad litem ("guardian") for C.E., Elmer Earl Bowser Jr., filed a response on behalf of the child, also in support of the circuit court's order. The guardian ad litem ("guardian") for N.E.-2, J.K. Chase, filed a response on behalf of the child, also in support the circuit court's order.[2] On appeal, petitioner alleges that the circuit court erred in requiring her to comply with the terms of an improvement period and in terminating her parental rights.[3]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these

---

[1]Because the biological mother and one of the children in this case have the same initials, N.E., we have distinguished each of them using numbers 1 and 2 after their initials in this memorandum decision.

[2]N.E.-2's guardian's response to this Court fails to include a section regarding the status of the children, or regarding oral argument. This information is of the utmost importance to this Court. The guardian's response also fails to include any legal authority. We refer the guardian to Rules 10(c), 10(d), 10(e), and 11(j) of the Rules of Appellate Procedure, which require briefs in abuse and neglect appeals to contain a section on the status of the children and require all respondents' briefs and summary responses to clearly exhibit appropriate citations to the record on appeal and legal authority upon which they rely. We decline to employ its use in this matter, but we caution the guardian that Rule 10(j) provides for the imposition of sanctions where a party's brief does not comport with the Rules.

[3]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2014, the DHHR filed an abuse and neglect petition alleging that petitioner caused C.E. to suffer physical injuries, resulting in multiple bruises on C.E.'s body. C.E.'s father, T.L., observed that C.E. had bruises "all up and down his arms and legs" and that his ankles were swollen and bruised upon petitioner returning C.E. after visitation. The petition further alleged that C.E. was not safe in petitioner's home. Also in January of 2014, the circuit court held a preliminary hearing and petitioner waived her rights to the preliminary hearing. Petitioner subsequently filed a motion for a pre-adjudicatory improvement period.

In March of 2014, the circuit court held a hearing regarding petitioner's motion for a pre-adjudicatory improvement period. The circuit court granted petitioner's motion and she was given an improvement period that would expire on September 16, 2014. The improvement period required that petitioner maintain a healthy environment for herself and her children by providing them with a home that was physically safe from individuals "who are known to portray acts of an unlawful nature."

In September of 2014, the DHHR filed an amended petition alleging that, on or about August 11, 2014, petitioner exposed her child, N.E.-2, to domestic violence between petitioner and her former live-in boyfriend, R.N. The petition alleged that petitioner reported to the DHHR that R.N. was violent with her and that she separated from him due to the domestic violence. The petition further alleged that petitioner exposed N.E.-2 to more incidents of domestic violence between petitioner and another boyfriend, D.E., when D.E. physically assaulted her. According to petitioner, she and N.E.-2 went back to live with her former boyfriend, R.N., despite a history of domestic violence in that home. Also, in September of 2014, the circuit court held a preliminary hearing on the amended petition and, after reviewing the evidence, concluded that petitioner repeatedly exposed N.E.-2 to domestic violence. The testimony at the hearing revealed that petitioner and N.E.-2 were still living with R.N. and that additional instances of domestic violence had occurred in the home. Petitioner and N.E.-2 left R.N.'s residence and began living with D.E. Approximately ten days later, D.E. and another man, T.S., engaged in a physical altercation in front of N.E.-2 The altercation involved weapons, including a tire iron. D.E. was arrested the same day for kicking petitioner in the stomach and attempting to hit N.E.-2 with his car.

In December of 2014, the circuit court held an adjudicatory hearing and found petitioner to be an abusing parent. The circuit court ordered a Multi-Disciplinary Team ("MDT") meeting and instructed that the physical and legal custody of N.E.-2 remain with the DHHR, while the physical and legal custody of C.E. remain with his father. Petitioner was granted supervised visitation with N.E.-2 Petitioner was not granted visitation with C.E.

In January of 2015, the circuit court[4] held a dispositional hearing that was ultimately continued until April 21, 2015. At the close of the hearing, the circuit court terminated

---

[4]Sometime between the adjudicatory hearing and the dispositional hearing, Senior Status judge Robert B. Stone took over for Judge Mark Karl.

petitioner's parental rights to both children. The circuit court determined that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that the children needed continuity of care and caretakers. The circuit court also concluded that a significant amount of time is required for children to be integrated into a stable and permanent home environment. The order was entered on April 30, 2015. Petitioner now appeals from this order.

The Court has previously established the following standard of review in such cases:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, we find no error in the circuit court's order terminating petitioner's parental rights.

Petitioner argues that the circuit court erred in terminating her parental rights because she did not intend for N.E.-2 to witness the altercation between D.E. and T.S., and that she did everything in her power to prevent the incident. However, petitioner's argument fails to consider our directions regarding termination upon findings that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected. This Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code [§] 49-6-5 [1977] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va. Code [§] 49-6-5(b) [1977] that conditions of neglect or abuse can be substantially corrected." Syl. pt. 2, *In Re: R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 2, *In re Dejah P.*, 216 W.Va. 514, 607 S.E.2d 843 (2004). Pursuant to West Virginia Code § 49-6-5(b)(3), a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the

3

abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

The DHHR presented testimony that it offered petitioner services, petitioner was not willing to solve her parenting problems, and petitioner refused to participate in at least three MDT meetings. The DHHR further testified that during petitioner's improvement period, she lied to the DHHR about her abusive relationship with R.N. According to the DHHR, petitioner lived in four different households with four different individuals and failed to maintain safe and suitable housing for her children, as required by the terms of her improvement period. Petitioner also failed to maintain a physically safe environment for her children or to complete parenting skills training as required by the terms of her improvement period. Petitioner admitted that she "failed her kids" and that her decisions exposed them to harm. The circuit court found that it was not in the children's best interests to be returned to petitioner's care and that she was unwilling or unable to provide adequately for the children's needs. This evidence constitutes a circumstance in which there is no reasonable likelihood that the conditions of abuse or neglect could be substantially corrected in the near future under West Virginia Code § 49-6-5(b)(3). Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon these findings.

While petitioner argues that she did not intend for N.E.-2 to witness the altercation between D.E. and T.S., her contention is not supported by the record on appeal. Termination of the parental rights of a parent claiming nonparticipation in the acts giving rise to the termination is authorized when there is clear and convincing evidence that the nonparticipating parent knowingly took no action to prevent or stop the acts to protect the child. *In the Matter of Scottie D.*, 185 W.Va. 191, 406 S.E.2d 214 (1991). In this case, petitioner testified that she knew that there would be an altercation between T.S. and D.E., petitioner's previous and current boyfriends. Petitioner also testified that she brought N.E.-2 with her to T.S.'s home even though she knew that there would be an altercation and that N.E.-2 should not be present. Finally, petitioner took no action to protect her child.

Petitioner also argues that the circuit court erred in terminating her parental rights because it was unfamiliar with the facts of her case. Petitioner's assignment of error relates to her contention that the circuit court should have spent more time familiarizing itself with her case before making its final decision. We disagree. The Honorable Robert B. Stone, Senior Status Judge was properly assigned to the case by this Court. The matter came on for a dispositional hearing in accordance with West Virginia Code § 49-6-5 and all parties were provided an opportunity to be heard. The record on appeal supports the circuit court's ruling that returning the children to petitioner was not in their best interests and that there was no reasonable likelihood that the conditions of abuse or neglect could be substantially corrected in the near future. As such, we find no error in the circuit court's order terminating petitioner's parental rights.

This Court finds that the circuit court was presented with sufficient evidence upon which to base its finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future, and its finding that termination was in the children's best interests. As noted above, petitioner knowingly allowed her child to be

transported to a location where a violent fight occurred between two men with which she had relationships. For these reasons, we find no error in the circuit court's order terminating petitioner's parental rights.

Next, petitioner argues that the circuit court erred in requiring her to comply with an improvement period because she passed a polygraph examination regarding the origin of C.E.'s physical injuries.[5] While petitioner argues that she "passed" a polygraph examination and that the circuit court should have considered the polygraph results in the abuse and neglect proceeding, she did not file the results of the polygraph examination with the circuit court or offer the results into evidence. The only information regarding the polygraph examination results was from petitioner's unsworn statement to the circuit court in April of 2015. Moreover, West Virginia Code § 49-6-12(b) grants circuit courts discretion in granting improvement periods upon the finding that the parent is likely to fully participate in the same. In filing her motion for a pre-adjudicatory improvement period, petitioner agreed to comply with the terms of the improvement period and she failed to complete said terms. The fact that petitioner may have passed a polygraph examination does not relieve her of the obligation to comply with the terms of her improvement period. Therefore, the circuit court did not err in requiring petitioner to comply with the terms of her improvement period.

For the foregoing reasons, we find no error in the decision of the circuit court and its April 30, 2015, order is hereby affirmed.

---

[5]This Court has held that

[s]ince we refuse to accept the artificial theory of admitting a polygraph on the basis of an agreed stipulation and on the basis the results relate only to credibility, and reject for the reasons stated the admission of the polygraph as a scientific test, we must conclude that the polygraph is not admissible in this State. *State v. Frazier*, 162 W. Va. 620, 252 S.E.2d 49 (1979).

Affirmed.

**ISSUED**: November 23, 2015

**CONCURRED IN BY**:

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II