# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: V.S. & R.D.**

**No. 14-1129** (Monongalia County 12-JA-39 & 12-JA-40)

**FILED**

May 18, 2015
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother C.A., by counsel Amanda J. Ray, appeals the Circuit Court of Monongalia County's September 5, 2014, order terminating her parental rights to V.S. and R.D.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Frances C. Whiteman, filed a response on behalf of the children in support of the circuit court's order. We note the summary response filed by V.S.'s non-abusing father M.S., by counsel P. Todd Phillips, also in support of the circuit court's order. On appeal, petitioner raises ten assignments of error regarding alleged errors by the guardian and the DHHR, alleged errors by the circuit court in adjudicating her as an abusing parent and terminating her parental rights, and regarding certain evidentiary rulings.[2] We address each issue seriatim.

---

[1]The parties disagree as to R.D.'s correct initials. Although we adopted petitioner's use of "R.V." in our November 12, 2014, scheduling order, upon review of the record and for consistency herein, we refer to this child as "R.D." both in the official caption of this case on appeal and throughout this memorandum decision. *See* Rules 5(d) and 11(d), R. App. P. ("The scheduling order will set forth the official caption of the case on appeal[.]"); *see also* Rule 2, *Id.* (Regarding suspension of rules for good cause shown.).

Further, we caution petitioner's counsel and, with particular concern, the guardian that Rule 11(j) of the Rules of Appellate Procedure requires all briefs filed by the parties to an abuse and neglect appeal to "contain a section immediately following the concise summary of argument . . . setting forth the current status of the minor children and any plans for permanent placement, and the current status of the parental rights of all the children's parents." This information is of the utmost importance to this Court. Although both briefs include at least a portion of this information interspersed throughout the body of their briefs and in footnotes, the incomplete and unorganized presentation of this information fails to comply with our Rules. Although we decline to employ its use in this matter, we note that Rule 10(j) provides for the imposition of sanctions where a party's brief does not comport with the Rules.

[2]While petitioner lists eleven assignments of error in the assignments of error section of her brief to this Court, she consolidates two of these in the body of her brief. We further consolidate her arguments as set forth below.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2012, the DHHR filed its first abuse and neglect petition against petitioner and her live-in boyfriend, T.D., who is R.D.'s biological father.[3] The DHHR alleged that petitioner and T.D. provided unsanitary and unsafe housing conditions, abused illicit substances, and failed to provide adequate supervision for the children. Ultimately, petitioner stipulated to those allegations and received an improvement period. In July of 2013, immediately prior to the final dispositional hearing, T.D. provided a drug screen sample. However, before receiving its results, the circuit court entered a dispositional order based on petitioner's successful completion of her improvement period (1) returning custody of R.D. to petitioner and T.D. and (2) granting primary residential custody of V.S. to her non-abusing father but providing weekly parenting time to petitioner.

Following that final dispositional order, T.D.'s drug screen tested positive for hydromorphone and opiates. Subsequently, in July and August of 2013, petitioner provided two positive drug screens—including one which was positive as diluted and one positive for hydrocodone and opiates. In late August of 2013, the DHHR filed its first amended abuse and neglect petition against petitioner and T.D. alleging continued substance abuse. The DHHR claimed that, in addition to those positive drug screens, Child Protective Services ("CPS") received a referral that they continued to use drugs in the home, and the children confirmed the continued drug use in a subsequent CPS interview. Upon filing the amended petition, the DHHR removed R.D. from petitioner's home and placed her in foster care.

In October of 2013, the circuit court held an adjudicatory hearing on the first amended petition. The CPS worker testified that petitioner failed two drug screens in July and August of 2013, and the children disclosed that there was continued drug use in the home. Following the CPS worker's testimony regarding petitioner's continued substance abuse, the circuit court adjudicated the children as abused and neglected by petitioner.

Prior to final disposition on the first amended petition, the DHHR filed its second amended petition against petitioner and T.D. in November of 2013. In the second amended petition, the DHHR alleged that petitioner failed to protect the children from T.D.'s extensive sexual abuse, which R.D. disclosed to both the foster parents and medical providers in several detailed statements. Those disclosures included, inter alia, allegations that T.D. (1) put his mouth "down there," (2) "put his peter bug in [her] cooter bug and butt"; (3) took naked pictures of her,

---

[3]The underlying proceedings concerned three children—V.S., R.D., and D.J. However, D.J. is not petitioner's child, and petitioner raises no issues on appeal with regard to D.J. in the circuit court's September 5, 2014, order. Therefore, we address only those issues that relate to the termination of petitioner's parental rights to V.S and R.D.

and (4) sexually abused her half-sister, V.S. According to the petition, R.D. claimed that petitioner knew about the sexual abuse.

Between April and May of 2014, the circuit court held three adjudicatory hearings on the second amended petition. The DHHR called the foster parent, an expert medical provider, the CPS worker, and the forensic interviewer who each recounted R.D.'s disclosures of sexual abuse. Petitioner called Dr. Joseph Wyatt, an expert in the field of clinical psychology and child sexual abuse, who testified that R.D.'s statements were inconsistent and unreliable, although he admitted that the differences in the child's accounts may have been the result of sexual abuse occurring on more than one occasion. Dr. Wyatt also claimed the forensic interview was improperly conducted by the counselor. Petitioner testified on her own behalf that she did not commit abuse or neglect. Based on this testimony, the circuit court entered an adjudicatory order finding that T.D. sexually abused R.D. and that petitioner failed to protect her child from it.

In September of 2014, the circuit court held dispositional hearings on the amended petitions. At those hearings, the circuit court denied petitioner's motions for a "new trial" and to alter or amend the adjudicatory order, finding that there existed no procedural or factual basis for those motions. Testimony established that petitioner continued to deny that sexual abuse occurred in the home. Testimony further established that petitioner failed to comply with her drug screens, as she had not provided a drug screening sample in approximately five months. Based on the evidence presented, the circuit court found that (1) an improvement period was not warranted, as petitioner failed to admit the problem at issue; (2) there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future; and (3) termination was in the children's best interests. The circuit court terminated petitioner's parental rights to both children with no post-termination visitation as to R.D. but with supervised post-termination visitation as to V.S. It is from that order that petitioner now appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). With those standards in mind, we turn to petitioner's assignments of error.

On appeal, petitioner first assigns error to the circuit court "allowing" the guardian (1) to fail to convey the children's wishes to the circuit court; (2) to improperly investigate the underlying facts; and (3) to file an incomplete and inaccurate report. While petitioner complains of the inadequacies of the guardian's investigation and report, we note that petitioner fails to indicate where in the record she objected to the same before the circuit court. Rule 10(c)(7), R. App. Pro. (stating that "[t]he argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal."). If properly presented below, the circuit court could have addressed these alleged deficiencies. "This Court will not consider an error which is not preserved in the record nor apparent on the face of the record." Syl. Pt. 6, *State v. Byers*, 159 W. Va. 596, 224 S.E.2d 726 (1976). In addition,

> [t]o preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect. The rule in West Virginia is that parties must speak clearly in the circuit court, on pain that, if they forget their lines, they will likely be bound forever to hold their peace . . . it must be emphasized that the contours for appeal are shaped at the circuit court level by setting forth with particularity and at the appropriate time the legal ground upon which the parties intend to rely.

*State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 216, 470 S.E.2d 162, 170 (1996). Therefore, we find that petitioner failed to preserve her complaints about the adequacy of the guardian's investigation and report for this appeal.

Nonetheless, if properly before us, we would find no error in this regard. As to petitioner's argument that the guardian failed to inform the circuit court of the children's wishes, West Virginia Code § 49-6-5(a)(6)(C) provides that "the court shall give consideration to the wishes of a child fourteen years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights." As petitioner admits, the children herein were only five and nine, respectively, at the time of termination with no indication that they had reached an age of discretion. Further, petitioner fails to cite any authority that places the burden on a guardian to convey a child's wishes to the circuit court in all abuse and neglect proceedings and that failure to do so constitutes reversible error. Therefore, we find no reversible error in this regard.[4] It is clear that the circuit court was not required to consider the children's wishes in this matter.

If we were to consider petitioner's argument as to the guardian's investigation and report, petitioner's limited examples of the guardian's allegedly improper performance, such as incorrectly noting that a hearing had been continued when it had not, would clearly be harmless error, if we found error at all. The record indicates that the guardian consistently updated the

---

[4]We note, too, that the guardian presented a general statement to the circuit court regarding the children's happiness in their placements. It is unclear whether this statement was a reflection of the children's wishes as to the termination of petitioner's parental rights.

circuit court as to the children's placement and condition, objected when necessary to pursue the children's best interests, reported her recommendations both in writing and in person, and generally protected the rights of the children. Although we are concerned with petitioner's argument that the guardian failed to meet with the children prior to the dispositional hearing, such an omission, if true, is not clear error in all circumstances. Petitioner does not argue that the guardian never met with the children. Instead, the issue is a matter of frequency. The frequency with which a guardian meets with her clients must be guided by circumstances. It is not clear from this record how often this guardian met with these children, who are still young; whether there was sufficient need to meet with them before each hearing; and what impact failure to meet with them before the final hearing would have had on the guardian's representation of those children's best interests. Therefore, we would not find on appeal, given the facts of this case, that the guardian failed to exercise reasonable diligence in carrying out her responsibilities both in her written report and at all relevant hearings. *See* Syl. Pt. 3, in part, *In re Scottie D.*, 185 W.Va. 191, 406 S.E.2d 214 (1991) (stating that, in abuse and neglect proceedings, a guardian "must exercise reasonable diligence in carrying out the responsibility of protecting the rights of the children.").

In her second and third assignments of error, petitioner argues that the circuit court erred in permitting the DHHR to violate both the Rules of Procedure for Child Abuse and Neglect Proceedings and the statutory requirement to file appropriate case plans.[5] Taken together, petitioner asserts seven deficiencies in the DHHR's performance below: (1) failure to file accurate court summaries, (2) providing inaccurate testimony at the dispositional hearing, (3) failure to file required case plans (4) failure to conduct services, (5) failure to fully investigate the allegations or the conditions in the home, (6) failure to ensure that the children's best interests were paramount, and (7) failure to work towards reunification. Based upon our review of the record on appeal, we find no reversible error on this issue.

As to petitioner's claim that the DHHR presented inaccurate court summaries and inaccurate testimony regarding her services and the amount of food in the home, to the extent the assertion is correct, it fails to rise to the level of reversible error. Petitioner challenged this purportedly inaccurate evidence, and she pointed out these concerns to the circuit court. She objected; cross-examined the DHHR witness who testified about petitioner's services; presented her own testimony and exhibits, including records of the one service she completed; and made "corrections and additions . . . to the [DHHR's] court reports at nearly every hearing[.]"

---

[5]As these two assignments of error are closely related, we address them together. However, much of petitioner's argument consists of unsupported, sweeping legal conclusions based on factual assertions cast in the light most favorable to her. She also cites no specific authority to support her second assignment of error. Although we address the merits of these claims, we refer petitioner's counsel to Rule 10(c)(7) of the Rules of Appellate Procedure (Requiring clear citations to points of fact *and law* presented.). In an Administrative Order entered on December 10, 2012, *Re: Filings That Do Not Comply With the Rules of Appellate Procedure*, then-Chief Justice Ketchum specifically noted in paragraph 7 that "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented . . . as required by rule 10(c)(7)" are not in compliance with this Court's rules.

Importantly, however, petitioner does not argue that the circuit court based its rulings on any inaccurate or false evidence or that the circuit court failed to accept petitioner's proffers and evidence of corrections and additions to the same. For these reasons, we find no reversible error in the circuit court's order based upon the DHHR's presentation of evidence to the circuit court.

Further, while petitioner correctly asserts that the DHHR failed to file an amended child case plan following her second and third adjudications, which is of great concern to the Court, we decline to find reversible error in the circuit court proceeding to disposition in this instance. *See* West Virginia Code § 49-6-5(a) (Requiring the DHHR to "file with the court a copy of the child's case plan, including the permanency plan for the child"); West Virginia Code § 49-6D-3(a) (Requiring a family case plan be filed within sixty days of a child's placement in foster care.); Rules 28 and 29, W.Va. R. Proc. Child Abuse and Neglect Proceed. (regarding the contents and notice of the child's case plan). At the dispositional hearing on the first petition in July of 2013, petitioner objected to the lack of a filed child's case plan, and the circuit court gave petitioner the option of a continuance so that one could be filed and that she could properly receive a copy of the same. However, petitioner opted to proceed, following a recess, and agreed to the DHHR's case plan during that recess. As to the filing of updated case plans prior to the final dispositional hearings in September of 2014, petitioner fails to demonstrate any prejudice on this issue.

Further, we have previously held that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order." Syl. Pt. 5, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 6, *In re Elizabeth A.*, 217 W.Va. 197, 617 S.E.2d 547 (2005). We find that failure to file updated child's case plans did not, under the circumstances of this case, substantially disregard or frustrate the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes. In the final dispositional hearings, petitioner did not object to the lack of an updated case plan until the second day of testimony, encapsulating the minimal impact such a failure had in these proceedings. It is also plain from the record that, by the time of the final dispositional hearings, the DHHR's position was to move for termination of her parental rights, which, if granted, would not permit her to participate in the children's placements or permanency. Finally, the circuit court heard ample evidence in favor of termination. By the time of those dispositional hearings, petitioner had not provided a drug screen in approximately five months and remained in a relationship with her child's adjudicated abuser. Given the circumstances presented in this case, we cannot find that the circuit court committed reversible error in this regard. *See* Rule 2, W.Va. R. Proc. for Child Abuse and Neglect Proceed. (stating that "[t]hese rules shall be liberally construed to achieve safe, stable, secure permanent homes for abused and/or neglected children and fairness to all litigants. These rules are not to be applied or enforced in any manner which will endanger or harm a child . . . .").

6

Petitioner's remaining claims against the DHHR's performance below lack support in the record. Despite petitioner's arguments to the contrary, the DHHR committed no reversible error as to services provided when necessary; as to its investigation of the allegations against her; as to its consideration of the children's best interests; or in its efforts to reunify the family when necessary. Under the first petition, the DHHR provided services to petitioner that she completed, and, despite her positive drug screen and an extended improvement period, she achieved a favorable disposition at that time. Based on a subsequent referral concerning petitioner's continued substance abuse, petitioner's positive drug screen, the children's disclosures, and the recent prior petition, the DHHR properly filed another petition against petitioner based on serious allegations of substance abuse in the home. Then, based on the disclosures by R.D., to multiple people on multiple occasions, that petitioner's boyfriend sexually abused her in the home and petitioner knew of the abuse, the DHHR properly filed the second amended petition.[6] As is common practice in such a scenario, the DHHR then had the child forensically interviewed, and she maintained her accusations of sexual abuse. The DHHR properly investigated and pursued these actions to remove the children from imminent danger, which was in the children's best interests. During this time, petitioner maintained her relationship with her boyfriend and failed to acknowledge the sexual abuse committed against her children. Although offered, by the date of the dispositional hearing, petitioner had failed to provide a drug screen in approximately five months. Based on the circumstances presented herein, we find no error in this regard.

In her fourth assignment of error, petitioner asserts that the circuit court violated Rule 2 of the Rules of Procedure for Child Abuse and Neglect Proceedings, which provides that "[t]hese rules shall be liberally construed to achieve safe, stable, secure permanent homes for abused and/or neglected children and fairness to all litigants." Although petitioner argues that the circuit court treated her unfairly for failing to rebuke the DHHR or guardian for their alleged inaccuracies, she cites no authority that places a legal requirement on a circuit court to reprimand a party under these circumstances. The record reflects that the circuit court did not treat any party unfairly, including petitioner and her counsel. The circuit court permitted petitioner full due process of law throughout the proceedings below and "afforded [her] a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses." W. Va. Code § 49-6-2(c). Petitioner, who was represented by counsel, received multiple adjudicatory and dispositional hearings. Although the circuit court ultimately ruled against petitioner's position, the circuit court is the entity charged with making credibility

---

[6]Although petitioner argues that the DHHR should not have based its actions on "a handful of non-specific disclosures" by a child, we find no basis for reversible error where a circuit court finds abuse or neglect based on the uncorroborated testimony of a victim. We have previously held in the context of criminal procedure, which employs a higher burden of proof than civil abuse and neglect proceedings, that "'[a] conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible [.]' Syllabus Point 5, *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981)." *Coleman v. Painter*, 215 W. Va. 592, 598–99, 600 S.E.2d 304, 310–11 (2004). See also West Virginia Code § 49–6–5(a)(7)(A) and (B)(v) (stating that "the [DHHR] is not required to make reasonable efforts to preserve the family if the court determines . . . [t]he parent has . . . committed sexual assault or sexual abuse of the child, the child's other parent . . . .").

determinations and rendering findings of fact in these proceedings. We have long explained that "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." *In re Emily*, 208 W.Va. 325, 339, 540 S.E.2d 542, 556 (2000) (citing Syl. Pt. 1, in part, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999)); *see also Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997) (stating that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Based on a review of the record, we find no merit to petitioner's claims that the circuit court treated her unfairly.

Petitioner next argues that the circuit court erred in finding abuse and neglect based on the first amended petition, and, as such, the circuit court's December 12, 2014, dispositional order should be reversed.[7] However, petitioner fails to demonstrate how such an error would impact the circuit court's dispositional order, given the uncontested fact that she was subsequently adjudicated based on the DHHR's second amended petition. Any error with regard to the adjudication based on the first amended petition has been rendered moot by the subsequent adjudication based on the second amended petition. "Courts will not ordinarily decide a moot question." Syl. Pt. 1, *Tynes v. Shore*, 117 W.Va. 355, 185 S.E. 845 (1936). A favorable decision by this Court on this issue would avail petitioner nothing with regard to her parental rights under the circuit court's dispositional order. However, if the issue were not moot, we would find no error. Despite petitioner's argument that the circuit court based this adjudication on one positive drug screen alone, the record clearly reflects that, in addition to her drug screen, the petitioner had previously stipulated to abuse and neglect of her children based on her drug use, the DHHR received referrals as to continued drug use in the home, and, most notably, the children confirmed the continued drug use in the home in a CPS interview. Based on the children's disclosures and petitioner's positive drug screen, the circuit court had sufficient evidence to find continued drug use in the home. Accordingly, we would find no error in this regard.

In her sixth assignment of error, petitioner argues that the circuit court "arguably" should have granted her motion to dismiss the second amended petition because it failed to state the exact times and locations of the underlying sexual abuse. Upon our review, we find no error in

---

[7]Petitioner also argues that the circuit court erred in adjudicating her boyfriend in the same regard. However, petitioner lacks standing to assert an assignment of error advancing a claim on behalf of a third party. We have previously held that

> "[t]raditionally, courts have been reluctant to allow persons to claim standing to vindicate the rights of a third party on the grounds that third parties are generally the most effective advocates of their own rights and that such litigation will result in an unnecessary adjudication of rights which the holder either does not wish to assert or will be able to enjoy regardless of the outcome of the case." *Snyder v. Callaghan*, 168 W.Va. 265, 279, 284 S.E.2d 241, 250 (1981) (citation omitted).

*Kanawha Cnty. Pub. Library Bd. v. Bd. of Educ. of Cnty. of Kanawha*, 231 W.Va. 386, 398, 745 S.E.2d 424, 436 (2013). Therefore, we do not address petitioner's claims concerning her boyfriend's proceedings or rights to these children.

the circuit court's denial of petitioner's motion to dismiss or in finding abuse and neglect based upon the second amended petition. West Virginia Code § 49-6-1(a) provides that

> [i]f the department . . . believes that a child is neglected or abused, the department . . . may present a petition setting forth the facts to the circuit court . . . . The petition shall be verified by the oath of some credible person having knowledge of the facts. The petition shall allege specific conduct including time and place, how such conduct comes within the statutory definition of neglect or abuse with references thereto, any supportive services provided by the department to remedy the alleged circumstances and the relief sought.

We have previously held that "[i]f the allegations of fact in a child neglect petition are sufficiently specific to inform the custodian of the infants of the basis upon which the petition is brought, and thus afford a reasonable opportunity to prepare a rebuttal, the child neglect petition is legally sufficient." Syl. Pt. 1, *State v. Scritchfield*, 167 W.Va. 683, 280 S.E.2d 315 (1981). In this matter, the petition contained the specific, and graphic, allegations of a four-year-old child, who may not have a cognizable appreciation for dates and locations, that T.D. put his mouth "down there," "put his peter bug in [her] cooter bug and butt," took naked pictures of her, and sexually abused her half-sister, V.S. Moreover, R.D. specifically stated that petitioner knew about these sexual abuses yet they continued. Upon our review, it is clear that the amended petition below contained the requisite specificity to afford petitioner a reasonable opportunity to prepare a rebuttal. Therefore, based on the foregoing, we find no merit to petitioner's argument on this issue.

In her seventh assignment of error, petitioner argues that the circuit court erred in finding that she knew or should have known of her boyfriend's sexual abuse. However, petitioner does not explain how petitioner's knowledge, or lack thereof, of the sexual abuse would defeat the outcome of these proceedings. West Virginia Code § 49-1-3(11)(A) defines a "neglected child" as one

> [w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when such refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian.

Whether petitioner knew or did not know of the sexual abuse, the evidence was sufficient to find harm against the child from petitioner's failure to supervise her, such that she was sexually abused by petitioner's boyfriend while under her care, custody, and control.

Nonetheless, the circuit court had sufficient evidence upon which to base the finding that petitioner knew of these abuses and failed to protect against them. West Virginia Code § 49-6-2(c) provides that a circuit court "shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . ." In discussing this evidentiary standard, we have previously held that

9

> W.Va. Code [§] 49-6-2(c) [1980], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing proof.' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden.

Syl. Pt. 1, in part, *In re Joseph A.*, 199 W.Va. 438, 485 S.E.2d 176 (1997) (internal citations omitted). As stated above, the circuit court heard evidence that R.D. specifically stated that she told petitioner about the sexual abuse and yet petitioner failed to protect R.D. from it. R.D. provided several accounts of petitioner's involvement, including one statement that petitioner was at the store when sexual abuse occurred and another statement that she was in the same room. Although petitioner argues that these statements were inconsistent, the statements would only be viewed as inconsistent if all of R.D.'s disclosures described one incident. The evidence clearly supports a finding that they do not. Even petitioner admits in her brief to this Court that there are "common elements" to R.D.'s disclosures. The child's statements support the finding by clear and convincing proof that petitioner knew that her boyfriend subjected this four-year-old child to severe sexual abuse, and petitioner failed to protect that child from it. *See Coleman v. Painter*, 215 W.Va. 592, 598–99, 600 S.E.2d 304, 310–11 (2004) (stating that, even under the higher burden of proof of a criminal prosecution, "'[a] conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible[.]' Syllabus Point 5, *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981)."). We have long recognized that "termination of parental rights is usually upheld only where the parent takes no action in the face of knowledge of the abuse or actually aids or protects the abusing parent." Syl. Pt. 3, in part, *In re Betty J. W.*, 179 W.Va. 605, 371 S.E.2d 326 (1988). Therefore, despite petitioner's attempt to discredit R.D.'s statements, the circuit court did not err in sustaining abuse and neglect based on this evidence.

Next, petitioner assigns error to the circuit court in "dismissing" the testimony of her expert witness, Dr. Joseph Wyatt. Dr. Wyatt, an expert in the field of clinical psychology and child sexual abuse, testified on petitioner's behalf that R.D.'s statements were inconsistent and unreliable, although he admitted that the differences in her accounts may have been the result of sexual abuse occurring on more than one occasion. Dr. Wyatt also testified that the forensic interview was overly suggestive and generally flawed. The DHHR, however, presented testimony that the child's disclosures were consistent and generally supported the forensic interview. While petitioner maintains that the circuit court "dismissed" her expert's testimony, we find no support for such a conclusion in the record on appeal. Instead, the circuit court appears to have appropriately weighed the conflicting testimony and evidence. It did so in favor of the DHHR. As explained above, "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." *In re Emily*, 208 W.Va. 325, 339, 540 S.E.2d 542, 556 (2000) (citing Syl. Pt. 1, in part, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999)); *see also Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Despite petitioner's presentation of expert testimony, the circuit court remained the trier of fact. We find no error in the circuit court's findings on this issue.

10

Finally, petitioner assigns error to the circuit court's termination of her parental rights to both children.[8] This Court has often held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va.Code [§] 49–6–5 [1977] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va. Code [§] 49-6-5(b) [1977] that conditions of neglect or abuse can be substantially corrected." Syl. pt. 2, *In Re: R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 2, *In re Dejah P.*, 216 W.Va. 514, 607 S.E.2d 843 (2004). West Virginia Code § 49-6-5(b)(5) provides that "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" exists when

> [t]he abusing parent or parents have repeatedly or seriously injured the child physically or emotionally, or have sexually abused or sexually exploited the child, and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems or assist the abusing parent or parents in fulfilling their responsibilities to the child.

In this matter, under the first abuse and neglect petition, petitioner stipulated to abuse and neglect of her children, completed an improvement period, and received a favorable disposition that was less restrictive than termination, pursuant to West Virginia Code § 49-6-5(a). *See also* Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980) (stating that "[a]s a general rule the least restrictive alternative regarding parental rights to custody of a child under W. Va. Code, 49-6-5 (1977) will be employed."). However, following two subsequent abuse and neglect petitions and two subsequent contested adjudications for petitioner's continued drug use and failure to protect the children from her boyfriend's sexual abuse, the circuit court terminated her parental rights to both children. By the date of the final disposition, petitioner had failed to take drug screens for approximately five months and continued to maintain a relationship with her boyfriend. Of considerable concern, the circuit court specifically found that petitioner failed to acknowledge the sexual abuse or take any steps to ameliorate the conditions that led to it. Based on the foregoing, the circuit court was presented with sufficient evidence to find that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination was in the children's welfare. Given the circumstances of this case, the circuit court did not err in terminating petitioner's parental rights without the use of less-restrictive dispositional alternatives.

Therefore, we find no error in the decision of the circuit court, and its September 5, 2014, order is hereby affirmed.

---

[8]Petitioner raises one assignment of error as to the termination of each child. As these two assignments of error are also closely related, we address them together.

Affirmed.

**ISSUED**: May 18, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II